EDWARD W. HATCH, Respondent, v. GEORGE E. MATTHEWS and Another, Appellants.

*Sufficiency of a complaint demurred to — when a publication is libelous per se, though no crime is charged.*

In determining the sufficiency of a complaint, upon the argument of a demurrer interposed thereto, in an action brought to recover damages for an alleged libel, it must be assumed that the facts stated therein, as well as such facts as may by reasonable and fair intendment be implied from the allegations made therein, are true.

If an article published in a newspaper contains statements which tend to hold a person up to scorn and ridicule, or which tend to degrade or disgrace him in the estimation of others, or if it imputes to such person dishonesty or unfair dealing or unjust conduct, it is libelous *per se.*

A person was not charged in a published article with having violated any criminal law, but it was alleged that he was a member of a gang which had entered into a scheme or arrangement to seize what could not be obtained peacefully and by proper means, the persons composing such gang having entered into an arrangement with a bank to rob the owners of a newspaper of their property, which was charged therein to have been a high-handed outrage.

*Held,* that the word "gang" was used in its common sense, viz., to describe a body of men banded together for improper and unlawful purposes; that such conduct would be considered as improper and unbecoming a good citizen, and to charge a person with having been guilty of such conduct would tend to disgrace and depreciate him in the estimation of his acquaintances, and would be libelous.

APPEAL by the defendants, George E. Matthews and another, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 4th day of September, 1894, upon the decision of the court rendered at the Erie Special Term overruling the defendants' demurrer to the complaint.

*Charles B. Wheeler,* for the appellants.

*Simon Fleischmann,* for the respondent.

LEWIS, J.:

This is an action of libel brought against the defendants as proprietors and publishers of the Buffalo *Morning Express,* a newspaper published in the city of Buffalo, for publishing an article in their paper of and concerning the plaintiff. The demurrer was taken upon the ground that the complaint failed to state a cause of action. The article complained of is set forth in full in the complaint.

In determining the sufficiency of this complaint it must be assumed that the facts stated therein, as well as such as may, by reasonable and fair intendment, be implied from the allegations made therein, are true. (*Milliken* v. *W. U. Tel. Co.,* 110 N. Y. 403.)

The article was headed: "Hatched out. Why that New Paper Died A-borning. *Enquirer* not for sale, at least not on the terms Bill Sirret offered. The Gang Enters Into an Alleged Arrangement With the Queen City Bank to Seize What it Could Not Get Peacefully — In Telling the Story Editor Kingsley Uses Words as Hot as Tabasco Sauce — The Bank's Denial." And then follows a statement that rumors of the proposition of certain Platt Republicans and disgruntled politicians to start another Republican newspaper in the city of Buffalo continue to be circulated, but that the eager disclaimers of some of the men whose names have been connected with

the scheme have tended to dull public interest in the project. It continues : " The latest reports, however, are far more interesting to the community than anything that has thus far been said regarding the scheme. It is now reported that Judge Edward W. Hatch, his brother, Charles S. Hatch, William B. Sirret, and others, who are credited with the ambition to win glory and renown as the publishers of a Republican newspaper which shall be the salvation of the party, and of Thomas C. Platt in particular, as well as a means of boosting their own political aspirations, have realized that it is impossible for them to obtain an original news franchise, and that, in their extremity, they have entered into an arrangement with the Queen City Bank to obtain possession of the Buffalo *Enquirer*."

And then follow statements that the Queen City Bank had obtained a judgment of $13,000 against a former owner of the *Enquirer*, and that a reporter of the *Express* had interviewed Mr. Inglehart, the attorney for the bank ; that Mr. Inglehart admitted that they had levied upon the *Enquirer's* plant, and intended to sell it, but that he denied that there had been any conspiring to obtain the *Enquirer's* plant. The article then states that the paper's reporter called upon Mr. Charles F. Kingsley, the editor and manager of the *Enquirer*, and then proceeds to give Kingsley's version of the case given by him to the reporter for the *Express*. The material part is as follows :

" The attempt of the Queen City Bank to rob the present owners of the *Enquirer* of their property is a high-handed outrage, and cannot be too strongly condemned. The knowledge of what that corporation has attempted to do is sufficient to convince all fair-minded men that it has lent itself to a most despicable conspiracy. Some time ago William B. Sirret came to me and asked the price upon the *Enquirer* newspaper and plant. When he found out that the paper could not be bought for any such sum as he mentioned, he remarked that the Queen City Bank had a judgment against a former owner of the *Enquirer*, which several of the persons interested with him in starting a new Republican paper believed would hold good against the present owners. * * * About noon of Wednesday, April 11th, I was informed by a prominent city official that John F. McGee and Ald. William K. Williams had

said that our price for the *Enquirer* newspaper and plant was alto-
gether too high and that a scheme was on foot to get possession of
it in some other manner than by direct purchase. He said that he
had been told by Williams and McGee that Sirret had called upon
W. F. Creed, of the Queen City Bank, and had entered into an
arrangement with that individual to have the bank seize the plant
of the *Enquirer* on a judgment obtained against one of its former
owners, many days after it had passed out of her possession, and sell
the same at sheriff's sale. In other words, Creed was to seize our
property and ruin our business in disregard of the fact that we were
in peaceful and undisturbed possession and had been for months.
For committing this outrage Creed was to get the face of the judg-
ment which he held against a former owner of the *Enquirer*, and
the Platt clique was to get a newspaper by bidding it in at the face
of the judgment. * * * We have evidence in our possession
which leads us to believe that the Queen City Bank, through Creed,
has entered into an arrangement to commit the outrage which is
charged. * * * Either this is persecution of the most flagrant
nature or it is an organized attempt at highway robbery. If it is
true, as I believe, that the Queen City Bank has entered into a deal
with the Platt Republicans to ruin our business, then this is the
principal offender, and it deserves the condemnation of the commu-
nity more than the cheap politicians who are in the scheme, because
it is a business institution and should adhere to reputable business
methods."

If this article contains statements which tend to hold the plaintiff
up to scorn or ridicule, or which tend to degrade or disgrace him in
the estimation of others, it is libelous *per se*. (*Bergmann* v. *Jones*,
94 N. Y. 51.) If it imputes to the plaintiff dishonesty or unfair
dealing, or unjust conduct, it is libelous. (*Holmes* v. *Jones*, 121 N.
Y. 467.)

While the plaintiff was not charged in the article with having
violated the criminal law, he is charged with being a member of a
gang which had entered into a scheme or arrangement to seize what
could not be obtained peacefully and by proper means. The word
"gang" is sometimes used to describe a body of men associated
together for purposes entirely proper, as a gang of laborers, etc.,
but it is more commonly used to describe a body of men banded

together for improper or unlawful purposes, like a gang of thieves, or a gang of robbers.   It was in the latter sense that it was used in this article.   It was alleged that the persons composing the gang had entered into an arrangement with the bank to rob the owners of the *Enquirer* of their property, which was charged to have been a high-handed outrage.    Such conduct would be considered as improper and unbecoming a good citizen, and to charge a person with having been guilty of such conduct would tend to disgrace and depreciate him in the estimation of his acquaintances.    There does not seem to be much room for doubt that the article was libelous. It, therefore, follows that the complaint stated a cause of action.

The judgment appealed from should be affirmed, with costs, but with leave to the defendants, on payment of the costs of the demurrer and of this appeal, to withdraw their demurrer and answer over within twenty days after service of notice of the entry of the order of affirmance.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Interlocutory judgment appealed from affirmed, with costs, with leave to the defendants to withdraw the demurrer and answer over within twenty days on payment of the costs of demurrer and of this appeal.